MAYES *vs.* POWER *et al.*, administrators.

1. On a suit brought by adminstrators for money loaned, the question being whether it was in fact loaned, and it appearing that the defendant came to a river bank and called to the intestate, who lived on the opposite side; that the latter took a boat and went across the river, where the two held some conversation; that the intestate returned to his house, had his wife to count him out $500 and with it immediately recrossed the river, where he was seen to hand something to the defendant, it was admissible to show that when he obtained the money from his wife, he stated that he was going to lend it to the defendant, and that, at once upon his return to the house, he told his wife and daughter that the defendant had obtained $500, and added, "Get the book and I will charge it." These statements were part of the *res gestæ*.

2. Evidence that it was the universal custom of the intestate to lend money in this way, without taking any note for it, was inadmissible; but evidence that the intestate had previously dealt with the defendant in the same way, was competent.

3. Under the plea of the general issue, there was sufficient evidence to warrant the finding that the loan was made. Had there been a plea of payment, the jury might have found for the defendant upon it, under the facts of this case.

December 5, 1887.

Evidence. *Res Gestæ*. Pleadings. Before Judge BROWN. Cobb Superior Court. March Term, 1887.

Reported in the decision.

WINN & FAW, for plaintiff in error.

C. D. PHILLIPS; W. R. POWER; J. Z. FOSTER, for defendants.

BLANDFORD, Justice.

This is a somewhat peculiar case. The administrators of Power sued Mayes for $500, money loaned. Upon the trial of the case, it was shown that Mayes came to the Chattahoochee river and called to Power, who was on the other side of the river; that Power took a boat and went

across to him, and that they held some conversation ; that Power returned, went into his house, and got his wife to count him out $500, stating at the time that he was going to lend it to Mayes ; that he took the money with him and immediately went back across the river, where he was seen to hand something to Mayes ; that he came back and stated to his wife and daughter, " All of you recollect that Mace A. Mayes has got $500," and added, " Get the book and I will charge it."

1. The court left it to the jury to say from this evidence whether Power had let Mayes have the money. Counsel for the plaintiff in error contended that the court should have rejected this testimony. We think that what Power said at the time was admissible as a part of the *res gestæ;* and these statements of Power, coupled with the fact that he was seen to return across the river and hand something to Mayes, were sufficient to authorize the jury to conclude that he had let Mayes have the money.

2. Dunwoody and Bishop testified that it was the universal custom of Power to lend money in this way and to take no note for it. This testimony was objected to, and we think that the court erred in admitting it. What may have been the custom of Power as to others than Mayes, could not affect Mayes. But in addition to this, Bishop swore that Power had before dealt with Mayes in the same way, taking no notes for the money ; and this, we think, was competent evidence.

3. The only plea was the general issue, Mayes merely denying that he got the money from Power. We think the evidence was sufficiently strong to authorize the jury to conclude that he did get it. If there had been a plea of payment, we think the testimony would have sustained it. The testimony is that Mayes went to see Power in his last illness, and brought him some whiskey ; that Power told his son to pay Mayes for the whiskey ; that Mayes said " No," he was giving him the whiskey, that he would have no right to sell it there anyway ; and that nothing

was said then about Mayes' owing him anything. This was a strong circumstance to show payment; and if there had been a plea of payment, the jury would have been warranted in finding that he had paid back the money.

We think the verdict was right, and that the court did right in refusing to grant a new trial.

Judgment affirmed.